No. 26,873.

HENRIETTE KELLER, *Appellant*, v. HENRY KELLER et al., *Appellees.*

SYLLABUS BY THE COURT.

HUSBAND AND WIFE — *Postnuptial Agreement — Validity and Effect.* A post-nuptial agreement reciting that the husband and wife had both been married, that each had children by a former marriage, and that at the time of their marriage each held and possessed real estate and personal property not in any manner obtained from or through the other; that each had children from such former marriage living, and that in consideration of the premises, promises and covenants of each, it was agreed that upon the death of either of them, the survivor should not be entitled to receive or claim any portion or interest in the separate property of the deceased owner at the time of the marriage or acquired·by either of them since their marriage to each other, was valid and binding on the surviving spouse.

Appeal from Ellis district court; JACOB C. RUPPENTHAL, judge. Opinion filed July 10, 1926. Affirmed.

*David Ritchie* and *Omer D. Smith,* both of Salina, for the appellant.

*J. E. Driscoll,* of Russell, and *Guy L. Hursh,* of Topeka, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: This controversy involves the validity of a post-nuptial agreement. The husband died and the wife sought to avoid its terms. The court held it valid, and plaintiff appeals.

The agreement recited that each of the parties had previously been married; that each had children by a former marriage, and that at the time of their marriage each held and possessed real estate and personal property not in any manner acquired or obtained from or through the other; that each had children from such former marriage living, and that, in consideration of the premises, promises and covenants of each, it was agreed that upon the death of either of them the survivor should not be entitled to receive or claim any portion or interest in the separate property of the deceased owner at the time of the marriage or acquired by either of them since their marriage to each other.

The plaintiff contends that the contract is not a conveyance; that it did not divest her of her right of inheritance in her husband's property; that the statute concerning descents and distributions

Husband and Wife, 30 C. J. pp. 627 n. 24, 635 n. 91, 639 n. 80, 642 n. 20, 712 n. 7. Since, 36 Cyc. p. 459 n. 39.

(R. S. 22-108) gives to the wife one-half of all the real estate which may have been owned by her deceased husband during the marriage, and which has not been sold on execution or other judicial sale, and not necessary for the payment of debts, and of which the wife has made no conveyance; that the land involved had not been sold on execution or other judicial sale, and is not necessary for the payment of debts, so that, under the plain mandate of the statute, one-half of this land, upon the death of her husband, must vest in her, unless she had made a conveyance thereof. She argues that under the statute, to which reference is made, the methods prescribed by which she could bar herself, or could be barred of the right to inherit the real estate of her deceased husband, are exclusive. That is to say, if the land had not been sold on judicial sale, and is not necessary for the payment of debts, then, and in that event, the only manner in which the wife could deprive herself of this inheritable interest would be by conveyance. Various authorities are cited in support of her contention which are not controlling here. Other theories are advanced to support the plaintiff's contentions which need not be discussed. This court has on other occasions had the same or similar question under consideration and decided adversely to the contention of the plaintiff.

In *King v. Mollohan,* 61 Kan. 683, 60 Pac. 731, it was said:

"Marriage settlements controlling the division and affecting the descent of property, freely and intelligently made, and which are just and equitable in their provisions, are not invalid." (Syl. ¶ 1.)

In *Eberhart v. Rath,* 89 Kan. 329, 131 Pac. 604, it was said:

"A widow residing and owning lands in this state married a man residing and owning property in Nebraska. As part of the marriage contract it was orally agreed that he should receive nothing of her estate in case she died first, and that she should receive the sum of $1,000 only of his estate in case he died first. After the marriage in Kansas the parties established their home in Nebraska, where they resided for seventeen years, when she died, leaving children by a former marriage and a son by her last marriage. Soon after the marriage the husband and the wife entered into a written contract, in view of the oral agreement, and of the same purport. In this action for partition brought by the children of the former marriage the surviving husband claims one-half of the land in this state owned by his wife at the time of the marriage and at her death. It is held that the written contract is valid and effectual although it does not recite or refer to the previous oral agreement." (Syl. ¶ 1.)

And in the opinion is this language:

"There is no statute in this state that makes a postnuptial contract of this

nature void. Apart from the previous agreement it is true that the written instrument was not made upon consideration of marriage, for that had already occurred, but a reciprocal relinquishment by each in the property of the other is sufficient. Reciprocal agreements varying marital property rights are referred to as among the considerations for antenuptial agreements in *Hafer v. Hafer*, 33 Kan. 449, 460, 6 Pac. 537. Mr. Bishop says: 'For the principle is well settled, that, though parties marrying must take the *status* of marriage as the law has established it, and cannot vary it by antenuptial contract, yet, within certain legal limits, and proceeding by legal rule, they may by such contract vary any or all of those property rights which the status superinduces.' (1 Bishop on the Law of Married Women, § 427.) While these citations refer to antenuptial agreements, the principle applies to those made after marriage unless the marriage disqualifies the parties from contracting with each other. . . . The instrument would also have been valid had no prior agreement been made." (pp. 333, 335.)

In *Bradley v. Burgess*, 109 Kan. 347, 198 Pac. 967, it was said:

"A contract by an old and infirm couple, husband and wife, for the division of their property, in which they agreed to separate because they could no longer continue to live together in comfort by reason of their infirmities and circumstances, and in which it was agreed that the husband, who was ill, should go to the home of a son by a former marriage, where he would receive proper attention, and the wife be relieved of the burden of attempting to look after him, is held, under all the circumstances, a valid contract, and not open to the objection that it violates public policy." (Syl. ¶ 1.)

A similar question was considered in *Marty v. Marty*, 111 Kan. 120, 206 Pac. 324, where the court said:

"An agreement was made between a husband and wife shortly after marriage in these words: 'The undersigned, Jacob J. Marti and Caroline Marti, his wife, both of Grantfork, Madison county, Illinois, hereby mutually agree that the property, both real and personal, owned at the present time by each of us, remain intact for the benefit of each one [one's] children. That neither party desires to disturb the property rights as existing at the present time.' Subsequently the husband made a will devising all of his property to his children. After his death the widow claimed a share of the property and elected to take under the statute of descents and distributions. *Held*, that under the agreement each party relinquished the right of inheritance in the property of the other." (Syl.)

In the contract under consideration there is no uncertainty. It specifically provides that upon the death of either of them the survivor shall not be entitled to receive or claim any portion of or interest in the separate property of the deceased owner at the time of the marriage or acquired since the marriage, but that all of such property shall go and belong to the children of the deceased by the

prior marriage or persons who would have been entitled thereto if they had never been married to each other.

The contract was made March 21, 1914. The parties were married in 1908. The plaintiff contends that the word "since" made the contract applicable only down to the date of the contract and not as to any subsequently acquired property. The defendants contend that the term was used in the sense of "after" and applied to all property acquired after the marriage. The word "since" is frequently construed to mean "after." In *State v. Mathews*, 68 W. Va. 89, it was said:

"The word 'since' is not always limited in meaning to the time between the present and a certain past event or to a space of time between two certain past events; it sometimes reaches beyond the present and embraces future time. When used as a preposition  .  .  .  [it may mean] 'during or within the time after; ever after; or at a time after; from and after the time, occurrence, or existence of.'" (See, also, *Jones v. Bank,* 79 Me. 191.)

The facts and circumstances surrounding the execution of the contract disclose that the construction which the parties put upon the term "since" was that it meant "after," and that by the terms of their agreement they were directing the disposition of any property either of them might have at the time of death. At the time of the execution of the contract under consideration the plaintiff executed an exhibit, attached thereto, agreeing and consenting that her husband could will and devise more than half of his real and personal estate owned at the time of his demise. It appears that no will was made, but the exhibit signed by the plaintiff at the time of the execution of the contract in question is expressive of the intention of the parties. The contract in the instant case, in our opinion, shows that the parties used the word "since" in the sense of "after" and that it was their intention that any property of which either spouse died seized should go to the children of that party, as provided by the terms of the contract.

The judgment is affirmed.