No. 35,197

Laura E. Porter, *Appellant,* v. Mabelle Axline, Administratrix With the Will Annexed of the Estate of James A. Porter, Deceased, *Appellee.*

(114 P. 2d 849)

Opinion filed July 5, 1941.

*George Barrett* and *Robert G. Miller,* both of Pratt, for the appellant.
*R. F. Crick* and *M. C. Bucklin,* both of Pratt, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This proceeding originated in the probate court on the petition of a widow, as the surviving spouse of her husband, to have set aside to her, under G. S. 1939 Supp. 59-401, 59-403, a homestead and $750 from the personal property of her husband. On appeal from the probate court the district court denied the petition because of the terms of a postnuptial agreement and the provisions of the husband's will. The widow has appealed.

Appellant and James A. Porter were married in 1901. Each had been married before, and each had property. He had five children by his first wife; it appears she had no children; and no children were born to this marriage. On November 1, 1929, they executed a written postnuptial contract which recited that the parties were husband and wife, and had been since 1901; that differences of opinion had arisen between them regarding what property belonged to each of them, and their respective rights as to the property owned by the other, and—

". . . It will be to the mutual benefit of these parties, and their future peace and harmony as husband and wife, to have their respective property rights settled and determined, and each made free to sell or otherwise dispose of or encumber their respective property, and to settle the matters of descent and distribution of said property after the death of these parties;

"Therefore, we, . . . each being fully informed as to the property rights of the other, do make and enter into this agreement, to wit:

"The husband shall retain, as his separate property, all that now stands of record as belonging to him and in his possession, real and personal, wherever situated, excepting the northwest quarter of section 10, township 32, range 37, Stevens county, Kansas, and the wife hereby conveys all her interest, right and title in and to all of the separate property of her said husband, to her said husband, his heirs and assigns.

"The wife shall retain as her separate property all that now stands of record in her name and in her possession, real and personal, wherever situated, described as follows (certain real property is described), and the husband hereby conveys to his said wife, her heirs and assigns, all his interest, right and title in and to her said separate property.

"Each party shall hereafter hold his or her property as their separate and several estate, and each of these parties shall have the right, from and after this date, to sell, convey, mortgage or otherwise encumber or alienate their said respective separate properties, real or personal, in such manner as he or she may desire, and each of these parties agrees that all such deeds of conveyance, mortgages, or other alienations shall be as effective and binding as

such as if these parties had both joined therein, and each of these parties hereby ratifies all such conveyances, mortgages or other alienations so made by the other party. . . .

"Hereafter each party shall be entitled to the management and control of his or her separate estate, and to contract regarding the same, and to enjoy the rents, issues and profits therefrom, to the same extent as if these parties were not married, but were single persons.

"Each of these parties hereby waives and surrenders the right to take by descent or distribution, under the laws of any state, as the heir or spouse of the other, and each party may hereafter execute his or her last will, in such form and manner as he or she shall desire, and each party hereby ratifies and confirms such last will of the other, and consents that the other party may devise and bequeath all of his or her separate estate, real and personal, and wherever situated, to devisees other than the other of these parties. (Then follows a provision by which the quarter section of land in Stevens county, the title of which was in the husband, was given to the wife in trust, the rents and profits to be used for the care and maintenance of her invalid brother, any excess to be her property; and upon the death of her brother prior to her death she was to continue to have the rents and profits as long as she lived and retain them as her sole and separate property.)

"It is further agreed that the homestead now owned and occupied by these parties in the city of Pratt, Pratt county, Kansas, consisting of (describing it), the title to this homestead now stands of record in the husband. Hereafter these parties shall have the right to continue in the occupation of this homestead, and in case of the death of the husband, the wife shall have the right to continue in the occupation thereof, together with all the furniture, household goods, fixtures and other contents of said home, for the remainder of her life, she to pay the taxes and other legal assessments thereon during the time that she may so occupy said homestead after the death of her husband, and any liens placed thereon with her consent during the lifetime of her husband, and keep the buildings thereon properly insured and in reasonable repair, damage by the elements excepted, and not to commit or permit waste thereon." (There was a further provision that the wife might create a further trust for the support of her invalid brother out of her own property, and the husband consented thereto.)

The agreement was made binding upon the parties, their heirs and personal representatives. It was duly acknowledged and filed for record both in Pratt county and in Stevens county, where some of the property was situated.

On July 5, 1933, James A. Porter executed his will, which provided, first, for the payment of his debts and funeral expenses.

"Second, my wife, Laura E. Porter as trustee for her brother, Nicholas L. Johnson is to receive the rents, issues and profits of the N. W. of section 10 township 32 range 37 Stevens county, Kansas, for the benefit of the said Nicholas L. Johnson during his lifetime; if she outlives him, then she is to receive the same during her lifetime, after paying the legal assessments and

taxes. (See postnuptial contract recorded in Misc. Book J, at page 221 in Reg. of Deeds office, Stevens Co., Kansas, also recorded in Book Misc. T, at page 396 in Reg. of Deeds office, Pratt county, Kansas.)

"Third, also according to the above mentioned contract, my wife Laura E. Porter is to have the use of the homestead, consisting of lots 11 and 12 block 15 (100 ft. frontage) of city of Pratt, her lifetime, after my death, together with the furniture and fixtures, she to pay the taxes and legal assessments and keep the property insured and in reasonable repairs according to contract. To be sold at my wife's death.

"Fourth, after all claims against me are paid, if anything is left it is to be divided as follows: (To his named children and grandchildren in fractional shares).

"Fifth, part of the household furniture belongs to my wife. She can dispose of that to suit herself—my part to be sold at her death, or whatever my administratrix thinks best."

James A. Porter died in January, 1940. His will was duly admitted to probate on February 16, 1940, at which time the court found, upon proper procedure and evidence, that the wife had consented to the will at the time it was made. This point is not controverted. An administrator with the will annexed was appointed. The inventory showed personal property of the appraised value of $2,062.35 and real estate of the value of $8,650, which included the homestead, appraised at $2,500. Following this the widow filed her petition first mentioned in this opinion. This procedure is authorized by G. S. 1939 Supp. 59-2235.

The pertinent portions of our statute (G. S. 1939 Supp., Articles 4, 5) necessary to be considered may be summarized or quoted as follows: A homestead occupied as a residence by the decedent at the time of his death, and continued to be so occupied by the surviving spouse, shall be exempt from distribution and from payment of the debts of the decedent, "but it shall not be exempt from sale for taxes thereon, . . . or for the payment of any lien given thereon by the joint consent of husband and wife." (59-401.) It shall not be subject to forced partition unless the surviving spouse remarries. (59-402.) In the personal property allowed to the surviving spouse, without regard to whether the decedent left a will, are (1) designated articles, including the household goods, and (2) other personal property not exceeding an appraised value of $750 (59-403), and "The surviving spouse, by electing to take under the will of the decedent or by consenting thereto, does not waive the homestead right nor the right to such allowance, unless it clearly appears from the will that the provision therein made for such spouse

was intended to be in lieu of such rights." (59-404.) And, 59-502 provides that descent in intestate estates is subject to the allowances provided in 59-403. All of these are sections of the probate code (Laws 1939, ch. 180).

Counsel for appellant cite and rely upon these statutes and contend that by virtue of them appellant is entitled to have the homestead set off to her and to have the allowances provided for a surviving spouse irrespective of the terms of the will. This contention overlooks the contract between the parties of November 1, 1929. The statutes cited and relied upon by appellant do not attempt to deal with a situation where there has been a valid contract between the parties respecting the disposition of their property upon the death of one of them. In 30 C. J., at page 642, the rule is thus stated:

"A postnuptial agreement making provision for the wife, in lieu of her rights in the property of the husband, if properly evidenced and reasonable, and freely assented to by her, is valid."

And at page 645 it is said:

"The construction of a marriage contract depends upon the law existing at the time of its execution."

To the same effect, see 6 R. C. L. 855.

In *Dunsworth v. Dunsworth*, 148 Kan. 347, 352, 81 P. 2d 9, it was said:

"It was early held in this state, and subsequently restated, that contracts, either made before or after marriage, the purpose of which was to settle property rights between the husband and wife, were to be liberally interpreted to carry out the intention of the persons making them." (Citing our earlier cases.)

In that case a contract made after the will had been executed was held to revoke it. In *Marty v. Marty*, 111 Kan. 120, 206 Pac. 324, the provisions of a contract of this kind were held not to be affected by a will subsequently executed by one of the parties. See, also, *Keller v. Keller*, 121 Kan. 520, 247 Pac. 433, where some of our earlier decisions are quoted from to the same effect. The rule adopted and so long applied in this state conforms to the majority rule. (See annotation in 49 A. L. R. 116.) The test of the validity of such contracts is whether they were fairly and intelligently made. In this case there is no contention the contract was unfair in any particular, or that it was not entered into intelligently. In this case the parties were not contemplating a divorce, neither did they con-

template living separate and apart from each other. Each was the owner of property at the time of the marriage. Over the years there had been controversy as to just what each one owned and as to how the property of each of them should be disposed of in the event of his or her death. To promote the harmony of their married life and have these questions settled, and without either attempting to deceive or defraud the other, they entered into the contract the material portions of which have been set out. This contract made provision for the homestead rights of the wife, if the husband died first, in substantial accord with the statute. The will contained a similar provision. It set up a trust out of the husband's property for the maintenance of the wife's invalid brother and for the wife's benefit as long as she should live, and that was incorporated in the will. By it the wife (each party) waived and surrendered her right to take by descent or distribution under the laws of any state as the heir or spouse of her husband and consented that he might thereafter execute a will in such form and manner as he might desire, devising or bequeathing all of his separate estate, real or personal, to someone else. Following that the husband made a will which conformed to the contract, so far as provision for appellant was concerned. She consented to the will. By the cases above cited and the authorities referred to in those decisions this was a valid contract. The trial court was of the opinion that appellant was not entitled to have set off to her any additional homestead rights, or any additional allowance as the surviving spouse of her husband. We concur in that view.

The result is the judgment of the trial court must be affirmed. It is so ordered.